# PHILIP S. WOODWARD, ET. AL., V. WM. SUGGETT, ET. AL.

## SUPREME COURT, AUSTIN TERM, 1883.

*Community Property—Declarations—Notice.*—Declarations of the husband that land was community property, not being communicated to the purchaser, does not operate as notice to the latter.

*Same—Tax Rolls.*—No purchaser is bound to examine the tax rolls of the county in quest of the true state of the title of land which he is about to purchase. The record books of the county clerk are the ones he must examine, and the party in whom they show the title to exist is the one from whom he must purchase, unless he has notice from other sources to the contrary.

*Alteration of Instrument.*—When nothing appears to the contrary the alteration of an instrument will be presumed to be temporaneous with the execution of the instrument.

Error from Coryell County.

*Thos. Rock,* for Plaintiffs in Error.

*Jno. E. McComb,* for Intervenors in the court below.

Opinion by Willie, C. J.

Under the pleadings and evidence in this cause, it is clear that so much of the judgment as finds in favor of the minors, George Suggett and Mary Suggett, 432 2-3 acres of the land in controversy, is correct and must be affirmed. The land was proved to have been the separate property of the father of these minors, and that they as his heirs, were entitled to two-fifths of it, and as heirs of their deceased brother, James, to one-twelfth more. The deed of their mother, made after the death of their father, conveyed to Womack only her life estate in one-third of the land, and the one-twelfth inherited by her from James, her deceased child. She having died and her life estate having become thereby extinguished, and those of her children, being adults, having conveyed to Womack their interest in the land, and making no claim to it, Womack became invested with three-fifths and one-twelfth of the land. This was the condition of the title on the day that Womack conveyed to Mrs. Woodward, *i. e.* the minor plaintiffs held an interest in it of two-fifths and one-twelfth, or 432 2-3 acres, and Womack an interest of three-fifths added to one-twelfth or 747 1-3 acres.

As Mrs. Suggett had warranted the title to the land sold by her, *i. e.* one-half of the tract in controversy, which warranty had failed, and her heirs had received from her estate, property to the value of

$160, they were therefore bound to make good the warranty to that extent, and hence the judgment finding for appellants as against plaintiffs that amount of money, was also correct.

The only remaining question arises between the heirs of Womack and the appellees. The evidence shows that Womack's first wife died March 24th, 1874, and that he received his deeds from the Suggetts, Oct. 20, 1874, seven months thereafter. Their deeds were duly acknowledged on the same day they were made, and were shortly thereafter placed upon record, and were on record at the time Mrs. Woodward purchased and received her deed.

In this state of facts there can be no doubt but that Mrs. Woodward obtained a good title to all of the tract Womack was authorized to convey, viz : 747 1-3 acres, unless she had notice, actual or constructive, that Womack had no authority to convey the land or some portion of it; for there is no question made as to her having paid for the land a valuable consideration.

It was claimed by the intervenors below, that the land was not Womack's separate property, but the community estate of himself and his first wife, (of which latter they were heirs) and hence that he could convey but one-half of it. The proof strongly tends to show and perhaps makes it sufficiently appear, that this land was the community property of Womack and wife, but does it establish that Mrs. Woodward was charged with notice of that fact ?

The proof on this subject amounted to about this : That Womack frequently stated that the land was community property; that he paid taxes on it for several years before he received his deeds from the Suggetts and during the lifetime of his wife; and in these deeds it appears that the original dates had been erased and the 20th of October, 1877, inserted in their places.

These declarations as to title were not shown to have been made to Woodward and wife, or to have ever been communicated to them in any way. They certainly cannot be effected by any statements as to Womack's interest in the land made by him to third parties, of which they had no knowledge, or else the necessity for the registration laws would be superceded, and their advantages wholly destroyed. No case has carried the doctrine of notice this far, and no reason can be urged why it should be so extended. Nor did the payment of the taxes by Womack effect the purchaser with notice that he had title to the land previous to the date of his deed. No

purchaser is bound to examine the tax rolls of the county in quest of the true state of the title of land which he is about to purchase. They are not made records for that purpose. The books of the county clerk are the ones he must examine, and the party in whom they show the title to exist is the one from whom he must purchase, unless he has notice from other sources to the contrary. The law requires him to examine these books, and charges him with notice of their contents whether he does so or not.

As to other books and papers, it makes no such requirement, and he is chargeable with notice of their contents only in the event he actually makes an examination or has information which should lead him to search their contents. It was not shown that appellees had ever examined as to who paid taxes on the land, or had been put upon inquiry as to that fact.

The evidence does not inform us what dates were erased from the deeds in lieu of which "20th of October, 1874" was inserted. The general rule of law seems to be that when nothing appears to the contrary, the alteration will be presumed to be temporaneous with the execution of the instrument.

1 Greenleaf on Evidence, 564.

There were other facts in the record which strengthen this presumption in the present case, but we need not resort to them, as it appears from the statement of facts that the plaintiff below proved that the conveyances in which the erasures occurred were actually executed on the 20th day of October, 1874. This fact was not contradicted in anyway whatever, and fully overcame and destroyed all suspicion arising from an alteration in the date of the conveyances. We think that the evidence showed no notice whatever to the appellants of the fact that the land conveyed to Mrs. Woodward was community property of Womack and wife, and that she obtained from Abram Womack a good title to 743⅔ acres of the land in controversy, and the judgment of the court below was erroneous in awarding her only one-half that amount.

The judgment will therefore be reversed and so reformed as to decree a recovery to George and Mary Suggett of 432⅔ acres of the land against the intervenors and defendants below; and to P. S. and Eleanor Woodward 743⅔ acres of the land as against both the plaintiff and intervenors, and $160 in money against the plaintiff alone, and that the intervenors take nothing by their intervention, but pay

all costs accruing by reason thereof in the court below; that the commissioners appointed in the judgment heretofore, or in case of their inability or refusal to act, others to be selected by the court, partition the land between the plaintiff, George and Mary Suggett of the one part, and the appellants of the other part, in proportion, as fixed by this judgment, but in all other respects conforming to the decree from which this appeal was taken, and that all cost accruing in the court below, except such as have already been decreed against the intervenors, as well as the future costs of partitioning the land, be assessed against the plaintiffs and the defendant in proportion to the amount of land partitioned to each of them.

It is further ordered that the costs of this court be equally divided between the appellants and the said intervenors.